UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IVY NIXON, *individually and on behalf of all others similarly situated*,

Plaintiff,

-against-

CVS HEALTH CORP., et al.,

Defendants.

ORLANDO TATONE, *individually and on behalf of all others similarly situated*,

Plaintiff,

-against-

CVS HEALTH CORP., et al.,

Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___12/05/2024___
```

24-CV-05303 (MMG)

**OPINION & ORDER**

24-CV-06771 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

Plaintiffs Ivy Nixon and Orlando Tatone in the two above-captioned, consolidated cases[1] assert securities fraud claims against Defendant CVS Health Corporation and individual Defendants Karen S. Lynch, Shawn M. Guertin, and Thomas F. Cowhey (together, "individual Defendants"), all of whom are or were executives at CVS, based on allegedly false and misleading statements and omissions made about CVS's Health Care Benefits segment. Both actions were brought pursuant to the Private Securities Litigation Reform Act ("PSLRA"). Pending before the Court are two motions to appoint lead plaintiff and appoint lead counsel. *See*

---

[1] In an order of this Court dated October 25, 2024 (Dkt. No. 32), the Court consolidated *Nixon v. CVS Health Corp. et al.*, 24-cv-05303, and *Tatone v. CVS Health Corp., et al.*, 24-cv-06771, upon request of all parties. *See* Dkt Nos. 30–32. Thus, the Court will not address the sections of the pending motions that request the consolidation of *Nixon* and *Tatone*, as that issue is now moot.

Dkt. Nos. 15, 17.  For the reasons discussed below, the Court appoints the Louisiana Sheriffs' Pension and Relief Fund, Southeastern Pennsylvania Transportation Authority, and City of Miami Fire Fighters' and Police Officers' Retirement Trust as lead plaintiffs, and appoints Bernstein Litowitz Berger & Grossman LLP and Bleichmar Fonti & Auld LLP as lead counsel.

## FACTS AND PROCEDURAL HISTORY

Defendant CVS Health Corporation ("CVS") is a healthcare company with three main divisions:  Health Care Benefits, Health Services, and Pharmacy and Consumer Wellness.  Dkt. No. 1 ¶ 2.  CVS's Health Care Benefits segment—the focus of this litigation—"purportedly offers 'a broad range of traditional, voluntary and consumer-directed health insurance products and related services,'" and its "revenues consist almost entirely of insurance premiums paid by customers."  *Id.*  Revenue for the Health Care Benefits segment is derived almost entirely from customers' insurance premiums, and the profitability of the Health Care Benefits segment is reliant on the accuracy of CVS's modeling of healthcare utilization patterns and medical cost trends, as well as CVS's internal cost forecasts.  *Id.* ¶¶ 3, 25.

Between February 9, 2022 and April 30, 2024 (the "Class Period"),[2] CVS represented that "its integrated health care model . . . lowers overall health care costs" and that its "Health Care Benefits segment is expected to continue to benefit from Medicare and Commercial membership growth."  *Nixon*, Dkt. No. 1 ¶¶ 27, 29; *Tatone*, Dkt. No. 1 ¶¶ 35, 37.  Plaintiffs allege, however, that CVS and the individual Defendants knew that these statements were materially false and misleading, and that they concealed the effect that increased medical costs

---

[2] The class period alleged by Plaintiff Nixon is May 3, 2023 through April 30, 2024, while the class period alleged by Plaintiff Tatone is February 9, 2022 through April 30, 2024.  *Nixon*, Dkt. No. 1 ¶ 1; *Tatone*, Dkt. No. 1 ¶ 1. The Court will use the longer class period alleged by *Tatone* because "it encompasses more putative class members."  *In re CMED*, No. 11 Civ. 9297 (KBF), 2012 WL 1118302, at *2 (Apr. 2, 2012) (citing *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402–03 (S.D.N.Y. 2003)).

and health care utilization had on the profitability of CVS's Health Care Benefits segment. *Nixon*, Dkt. No. 1 ¶ 32.  These alleged false and/or misleading statements and omissions during the Class Period allegedly caused a "precipitous decline in the market value of [CVS's] securities," and caused "significant losses and damages" to the proposed class.  *Id.* ¶ 12.

Plaintiffs Nixon and Tatone (together "Plaintiffs") allege that CVS and the individual Defendants included the false and misleading statements in quarterly reports, press releases, SEC filings, and earnings calls during the Class Period.  CVS continually revised its diluted and adjusted earnings-per-share ("EPS") guidance ranges and lowered its reported revenue for its Health Care Benefits segment.  *See id.* ¶¶ 4–12; *see also Tatone*, Dkt. No. 1 ¶¶ 5–13.  These quarterly revisions to EPS guidance ranges and reported revenue for the Health Care Benefits segment, in addition to lowered expectations of the profitability of the Health Care Benefits segment, led to decreases in CVS's stock prices immediately following various related public announcements throughout the Class Period.  *See, e.g.*, *Nixon*, Dkt. No. 1 ¶¶ 4–12; *Tatone*, Dkt. No. 1 ¶¶ 5–13.  Specifically, Plaintiff Nixon alleges that:

> Defendants made false and/or misleading statements and/or failed to disclose that: (i) the forecasts CVS used to determine plan premiums were ineffective at accounting for medical cost trends and health care utilization patterns; (ii) as a result, CVS was likely to incur significant expenses to cover cost increases that were not accounted for in [CVS's] forecasts and thus not covered by plan premiums; (iii) accordingly, CVS had overstated the profitability of its Health Care Benefits segment; (iv) contrary to Defendants' assurances, the revenues generated from [CVS's] other primary segments were insufficient to offset the negative financial impact of the increasing expenditures within the Health Care Benefits segment; and (v) as a result, [CVS's] public statements were materially false and misleading at all relevant times.

*Nixon*, Dkt. No. 1 ¶ 4.  Similarly, Plaintiff Tatone alleges that:

> Defendants made false and/or misleading statements and/or failed to disclose that: (1) CVS had deficient internal; controls; (2) as a result of its deficient internal controls, CVS's financial statements for the fiscal year 2022 contained false and/or misleading information; (3) as a result of its deficient internal controls, the forecasts

CVS used to determine plan premiums were ineffective at accounting for medical cost trends and health care utilization patterns; (4) as a result, CVS was likely to incur significant expenses to cover cost increases that were not accounted for in [CVS's] forecasts and thus not covered by plan premiums; (5) accordingly, CVS had overstated the profitability of its Health Care Benefits segment; (6) contrary to Defendants' assurances, the revenues generated from [CVS's] other primary segments were insufficient to offset the negative financial impact of the increasing expenditures within the Health Care benefits segment; and (7) as a result, [CVS's] public statements were materially false and misleading at all relevant times.

*Tatone*, Dkt. No. 1 ¶ 4.

**ANALYSIS**

Pending before the Court are two motions for appointment of lead plaintiff and lead counsel, one filed by the Louisiana Sheriffs' Pension and Relief Fund, Southeastern Pennsylvania Transportation Authority, and City of Miami Fire Fighters' and Police Officers' Retirement Trust ("Pension Funds"), and the other filed by Lancaster Partner LLC ("Lancaster Partner").[3] *See* Dkt. Nos. 15, 17. The Pension Funds oppose Lancaster Partner's motion. Dkt. No. 26. Lancaster Partner submitted a notice of non-opposition to the Pension Funds' motion, informing the Court that "it appears that Lancaster Partner does not have the 'largest financial interest' in this litigation within the meaning of the PSLRA." Dkt. No. 24 at 2. Accordingly, the Pension Funds' motions are essentially unopposed.

**I.      The Pension Funds are Appointed as Lead Plaintiff**

  **a.  Legal Standard**

The PSLRA "governs motions for appointment of lead plaintiff and approval of lead counsel in putative class actions brought under federal securities laws" and "directs the court to appoint as lead plaintiff the party or parties 'most capable of adequately representing the interests of class members.'" *Turpel v. Canopy Growth Corp.*, 704 F. Supp. 3d 456, 464 (S.D.N.Y.

---

[3] Edith Konya filed a motion for appointment as lead plaintiff, but withdrew her motion on September 16, 2024. *See* Dkt. Nos. 13, 22. Thus, Ms. Konya's motion is not pending before the Court.

2023) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)).  Prospective lead plaintiffs must file a motion for appointment as lead plaintiff within sixty days of the publication of notice of the securities class action.  15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

The PSLRA establishes a "rebuttable presumption that the most adequate plaintiff is the person who:  "(1) either 'filed the complaint' or 'made a motion in response to a notice'; (2) has the 'largest financial interest in the relief sought by the class'; and (3) 'satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.'"  *Turpel*, 704 F. Supp. 2d at 464 (internal references omitted) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc)).  This presumption can be rebutted only through a showing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### b.  The Pension Funds are a Proper Group

As an initial matter, the Pension Funds are an amalgamation of three separate, unrelated pension funds that have jointly moved for appointment as lead plaintiff.  The PSLRA permits more than one class member to serve as lead plaintiff, stating that "[t]he court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  However, courts in this district have recognized that "the appointment of an aggregation of unrelated plaintiffs as lead counsel risks 'defeating the purpose of choosing a lead plaintiff.'"  *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 119 (S.D.N.Y. 2010) (quoting *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157 (S.D.N.Y. 1997)).  The congressional design for the appointment of the lead plaintiff in PSLRA cases is intended "to ensure that institutional

plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation, not lawyers." *Id.* (internal references omitted); *see also In re Oxford Health Plans, Inc. Sec. Litig*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998) ("Congress 'intend[ed] that the lead plaintiff provision will encourage institutional investors to take a more active role in securities class action lawsuits." (quoting H.R. Rep. No. 104–369 at 34)).

To preserve this intent, "the Court must reject a movant 'group' with the largest losses on a determination that it is simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as 'lead plaintiff,' which can then select the equally artificial grouping of counsel as 'lead counsel.'" *Janbay*, 272 F.R.D. at 119 (internal references omitted); *see also In re Petrobras Sec. Litig*, 104 F. Supp. 3d 618, 621–22 (S.D.N.Y. 2015) ("Allowing unrelated plaintiffs to band together in order to manufacture a larger financial interest . . . ensures that the lawyers, who are invariably the matchmakers behind such marriages of convenience, are the true drivers of the litigation.").

Here, the three individual pension funds that comprise Movant Pension Funds are all institutional investors who have a substantial financial interest in the outcome of this litigation. *See* Dkt. No. 16 at 9. So far, the individual pension funds have demonstrated the "ability to function as a cohesive and independent unit to protect the interests of the class." *In re Petrobras Sec. Litig*, 104 F. Supp. 3d at 622. Two law firms have jointly represented all three pension funds from the outset of this litigation, and the Pension Funds have moved to appoint this team as co-lead counsel. However, this is not a situation where multiple firms that each separately represented different plaintiffs are joining together after the fact in a proposed "marriage[] of convenience," *id.*, that privileges the financial interests of the lawyers over the interests of the class as a whole. The circumstances here minimize the concern that there will be "problems of

coordination, [and] risks of duplication of effort." *Id.* The Court is satisfied that the sophisticated institutional investors that comprise the Pension Funds have "demonstrated their intent to participate directly in this litigation and their willingness and ability to serve as class representatives." *Janbay*, 272 F.R.D. at 119. Thus, the Court is prepared to consider the Pension Funds as a "group" for purposes of the PSLRA.

        **c. Notice and Timing**

To meet the timely filing and notice requirements of the PSLRA, the parties are required to publish notice of the pendency of the action, the asserted claims, and the class period in a widely circulated national business-oriented publication. 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice must also advise purported class members that, not later than 60 days after the publication of the notice, any purported class member may file a motion to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). "Accordingly, a movant for lead plaintiff must either (1) file the complaint or (2) make a motion for lead plaintiff associated with the first-filed complaint within sixty days." *May v. Barclays PLC*, 23-cv-2583 (LJL), 2023 WL 5950689, at *6 (S.D.N.Y. Sept. 13, 2023).

Here, in connection with the filing of the complaint in *Nixon v. CVS Health Corp., et al.*, 24-cv-05303, Plaintiff Nixon published notice of the action in the publication *GlobeNewswire*, a national wire service, on July 12, 2024. *See* Dkt. No. 18-4; *see also Turpel*, 704 F. Supp. 3d at 463 (S.D.N.Y. 2023) (stating that *GlobeNewswire* is a "widely circulated national business-oriented publication or wire service" (internal references omitted)). The notice informed investors of the pendency of the action and further informed them of the September 10, 2024 deadline to seek appointment as lead plaintiff. *Id.* at 2. On September 10, 2024, movants the Pension Funds and Lancaster Partner filed their motions for appointment as lead plaintiff. *See*

Dkt. Nos. 15, 17.  Both motions were filed within the statutorily required sixty-day timeframe and are therefore timely.

### d.  The Pension Funds have the Largest Financial Interest in the Relief Sought

Although the PSLRA establishes a rebuttable presumption that the most adequate person is the person or group that has the "largest financial interest in the relief sought by the class" and satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the PSLRA does not establish a method by which to calculate who has the "largest financial interest in the relief sought by the class."  *See May*, 2023 WL 5950689, at *7; *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008).  Similarly, the Supreme Court and Second Circuit have not specified a method for this calculation.  *May*, 2023 WL 5950689, at *7.

Despite this lack of clarity, district courts throughout the Second Circuit generally consider four factors, called the *Lax/Olsten* factors, to evaluate the financial interest of prospective lead plaintiffs:  "'(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period."  *Id.* (quoting *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1996)).  Courts consider the fourth factor to be the most important factor in this analysis.  *See, e.g.*, *Reitan v. China Mobile Games & Ent. Grp., Ltd.*, 68 F. Supp. 3d 390, 395 (S.D.N.Y. 2014).

Applying the *Lax/Olsten* factors to this case, the Pension Funds collectively (1) purchased 145,745 CVS shares during the Class Period; (2) purchased 118,945 net shares during the Class Period; (3) expended a net total of $10,497,525 during the Class Period; and (4) incurred losses of approximately $2,493,094.[4]  Dkt. No. 26 at 5–6; *see also* Dkt. Nos. 18-1, 18-2.

---

[4] In their opening brief, the Pension Funds state that they have "incurred a loss of approximately $2.9 million as calculated on a FIFO [first-in, first-out] basis and approximately $2.5 million when calculated

Lancaster Partner, on the other hand, claims $785,974 in losses stemming from the purchase of 148,296 shares of CVS stock and 2,588 CVS options contracts. *See* Dkt. No. 20 at 10. Thus, the Pension Funds allege significantly greater financial losses than Lancaster Partner. Lancaster Partner agrees that it does not have the largest financial interest in this action. Dkt. No. 24 at 2 ("[I]t appears that Lancaster Partner does not have the 'largest financial interest' in this litigation within the meaning of the PSLRA.").

Therefore, the Pension Funds are the movant with the largest financial interest in the outcome of this litigation.

### e. The Pension Funds Meet the Requirements of Rule 23

Once the Court identifies the prospective lead plaintiff with the largest financial stake in the litigation, it must then focus its inquiry on whether that prospective lead plaintiff satisfies the other PSLRA statutory requirements. *See, e.g.*, *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 535 (S.D.N.Y. 2015) (internal references omitted). The prospective lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, but at this early stage in the litigation, courts need only consider whether the prospective lead plaintiff satisfies the typicality and adequacy prongs of Rule 23. *See id.* at 536; *Aude v. Kobe Steel, Ltd.*, 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018) ("The Rule 23 analysis in the context of appointment of lead plaintiff 'need not be as complete as would a similar determination for the purpose of class certification.'" (quoting *In re eSpeed Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005))).

---

on a LIFO [last-in, first-out] basis on their investments in CVS securities during the Class Period." Dkt. No. 16 at 6. Because the "overwhelming trend both in this District and nationwide has been to use LIFO to calculate such losses," the Court finds that, for purposes of the instant motion, the Pension Funds' losses are $2,493,094. *See Rodriguez v. DraftKings Inc.*, Nos. 21 Civ. 5739 (PAE), 21 Civ. 6497 (PAE), 2021 WL 5282006, at *4 (S.D.N.Y. Nov. 12, 2021) (collecting cases); *see also* Dkt. No. 26 at 5–6 (calculating losses at $2,493,094, which rounds up to approximately $2.5 million).

"Movants can demonstrate typicality by showing that their claims 'arise from the same conduct from which the other class members' claims and injuries arise[.]'" *Chauhan v. Intercept Pharm.*, 21-cv-00036 (LJL), 2021 WL 235890, at *3 (S.D.N.Y. Jan. 25, 2021) (quoting *In re Crayfish Co. Sec. Litig.*, No. 00 Civ. 6766 (DAB), 2002 WL 1268013, at *5 (S.D.N.Y. June 6, 2002)). "[T]he Lead Plaintiff's claims do not have to be identical to the other class members' claims." *Canson v. WebMD Health Corp.*, Nos. 11 Civ 5382 (JFK), 11 Civ. 6031 (JFK), 2011 WL 5331712, at *4 (S.D.N.Y. Nov. 7, 2011) (internal references omitted).

The Pension Funds argue that their claims are typical of the class because they "and all other Class members suffered the same injuries, their claims arise from the same course of events, and their legal arguments to prove Defendants' liability are nearly identical." Dkt. No. 16 at 7. Specifically, the Pension Funds "(1) purchased CVS securities during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) were damaged as a result." *Id.* These facts are sufficient to make a preliminary showing of typicality. Moreover, there are no facts in the record or arguments in opposition to suggest at this time that the Pension Funds' claims are not typical of the claims of other class members. Accordingly, the typicality prong is satisfied for present purposes.

"A presumptive lead plaintiff is adequate if they (1) have no conflict of interest with the other members of the class, (2) have sufficient interest in the outcome of the case, and (3) have selected counsel that is qualified, experienced, and generally able to conduct the litigation in question." *May*, 2023 WL 5950689, at *18 (internal references and marks omitted). The Pension Funds argue that they have a "substantial financial stake" in the outcome of this litigation that "provides them with the ability and incentive to vigorously represent the Class's claims," their claims are not "antagonistic" to those of other class members, and they have

retained "highly qualified and experienced securities class action" counsel.  *See* Dkt. No. 16 at 8–9.  In sum, the Pension Funds have "retained well-qualified and experienced counsel," *see infra* § II, their "degree of losses suggest[] [they] will have a sufficient interest in advocating on behalf of the putative class members, and there is no reason to believe that [their] claim[] would be subject to any unique defenses."  *Aude*, 2018 WL 1634872, at *4.  Therefore, the adequacy prong is satisfied for present purposes.

Because the Pension Funds have made the requisite preliminary showing of typicality and adequacy under Rule 23 of the Federal Rules of Civil Procedure, they have satisfied the third element of the PSLRA Lead Plaintiff analysis.

*        *        *        *

The Pension Funds timely filed their motion for appointment as lead plaintiff, have shown that they have the largest financial interest in the outcome of this litigation among the movants for lead plaintiff status, and have shown that they satisfy the typicality and adequacy elements of Rule 23.  As no party has rebutted the Pension Funds' status as the presumptive lead plaintiff, the Pension Funds are appointed lead plaintiff in the instant action.

## II.    Bernstein Litowitz Berger & Grossman LLP and Bleichmar Fonti & Auld LLP are Appointed as Lead Counsel

Under the PSLRA framework, the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  "There is a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection."  *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 278 (S.D.N.Y. 2015) (internal references omitted); *see also May*, 2023 WL 5950689, at *19.

Here, the Pension Funds selected the law firms Bernstein Litowitz Berger & Grossman LLP and Bleichmar Fonti & Auld LLP, firms that have significant experience (and success) with

securities class action litigation.  *See* Dkt. No. 16 at 13–14; *see also* Dkt. Nos. 18-5, 18-6.

Although appointment of more than one law firm can be cause for concern, here the two firms

have jointly represented the group of Pension Funds from the outset of the case, and the Pension

Funds are sophisticated institutional investors with a vested interest in this matter, as set forth

above.  While the Court cautions counsel about the need to avoid duplication of effort, the Court

is confident that these firms, as an intentionally constituted team, can adequately represent the

interests of the prospective class, and there are no facts that warrant the Court to go against the

"strong presumption" in favor of appointing the lead plaintiff's selection of counsel and lead

counsel.  Therefore, the Court appoints the law firms Bernstein Litowitz Berger & Grossman

LLP and Bleichmar Fonti & Auld LLP as lead counsel.

## CONCLUSION

For the aforementioned reasons, the Pension Funds' motion to appoint lead plaintiff and

lead counsel is hereby GRANTED, such that the Pension Funds are appointed as lead plaintiff

and Bernstein Litowitz Berger & Grossman LLP and Bleichmar Fonti & Auld LLP are appointed

as lead counsel.  Lancaster Partner's motion to appoint lead plaintiff and lead counsel is hereby

DENIED.  Within fourteen (14) days of the date of this Opinion and Order, the parties shall

jointly submit a proposed schedule for filing any amended complaint, Defendants' answer,

opposition, or response thereto, and, if necessary, deadlines for oppositions and replies for any

contemplated motions to dismiss.

The Clerk of Court is respectfully directed to terminate Dkt. Nos. 15 and 17.

Dated:  December 5, 2024
        New York, New York

                                        SO ORDERED.

                                        _____
                                        MARGARET M. GARNETT
                                        United States District Judge